State
v.
J. W.

STATE *against* J. W.

AT the last term, the defendant was tried for forgery in the alteration of a promissory note.

The indictment stated, that he had in his possession by purchase the following note:

*Bridport, November* 12th, 1800.

For value received, I promise to pay *Amos Smith* twenty dollars worth of stock, by the first of *October* next, with*out* use.

As witness,

*Ephraim Smith.*

That he falsely, wittingly, deceitfully and feloniously, did alter or cause the same to be altered by obliterating the letters and syllable *out* from the word *without,* and then avers that the word *use* intends *interest.*

A second count charged the defendant with uttering and publishing as true, the same false, forged and altered note, knowing the same to have been so forged and altered.

The Jury found him guilty of the first count, and not guilty of the second.

At the same term, after verdict, the defendant moved for a new trial, upon the ground of having since the trial discovered new and material evidence.

His motion was accompanied with his own affidavit and that of *Asa Strong*, who testified, " that he was present at the trial, when *Christiana*, the wife of

On an indictment for forgery and verdict guilty, the Court will not grant a new trial grounded on motion for new and material evidence, because the delinquent's wife has since the verdict confessed that she perpetrated the fact without the privity of her husband.

the prisoner, informed him that she well knew how and in what manner and by whom the alteration was made in the note then under consideration. After some hesitation, and repeatedly declaring her husband was innocent, she said she did it herself. She said her husband had left the note with some other papers on a shelf in the bar, on which stood a leaky vessel of water, which was spilled on the papers; that in this way the note got wet; that she, in attempting to smooth the papers, and to rub off the dirt and water that was upon the note with her thumb nail, made the hole which now appears in the note. . She said it was hard her husband should suffer when he was innocent; that he blamed her for wetting the papers, and therefore she did not dare to tell him any thing about the hole that she made in the note. When the prisoner was coming from the bar, after the Jury had brought him in guilty, I informed him of what his wife had said. He seemed surprised, and observed, that it was unfortunate he did not know of it before the trial."

At this term the motion was argued.

*Samuel Miller.* We come forward under some embarrassment in the support of the present motion, arising from our being unable to find, after diligent search, any precedents in the books which will exactly accord with our case; but we consider the principles which have generally governed in the granting of new trials to be with us, and we have the firmest reliance on the justice and clemency of the Court; *that* justice which will not convict the innocent, and *that* clemency which will not suffer a man of hitherto

irreproachable life to be condemned to indelible igno-
miny, through an unhappy mistake, which grew out
of the best affections of the human heart.

Born, educated and married in a neighbouring
State, my client there lived for many years in the in-
dustrious and honest accumulation of a decent estate.
He saw his family, wealth and reputation, annually
increase, He lived respected by his friends, and re-
peatedly honoured by the election of his fellow towns-
men with places of public trust.

" With all his blushing honours thick upon him,"
he removed with his family into this State. *Here*, as
his neighbours can witness, he has pursued the same
blameless tenor of life, and, until this unhappy inci-
dent, preserved the same unspotted character, and so
increased his property as to put him far above the
temptation to commit a crime of this nature.

The note in question was purchased by him with
the charitable design of relieving an embarrassed
neighbour. Expecting the promisor to discharge it,
he unfortunately took it from his desk, and deposited
it with other papers, where it was wet and soiled by
the oversetting of a vessel of water. His wife, in her
attempts to clean it, rubbed the folds of the paper, and
a single syllable was obliterated. Perhaps uncon-
scious of the import or importance of the letters ex-
punged, or fearing to give pain to a husband who had
so many years exercised the greatest tenderness to-
wards her, she refrained from informing him of the
accident.

But when she entered the hall of justice, and be-
held her husband arraigned and on trial for an infamous
crime; when she saw the consequences of her own

imprudence just ready to conclude in the conviction and punishment of a beloved and innocent husband, and in the disgrace and ruin of her family, she could retain the fatal secret no longer. She burst into tears, and disclosed it to the deponent. That he did not immediately communicate it to her husband's counsel, is to be lamented; but so it was, that my unfortunate client, on retiring from the bar after the verdict, first learned the cause of his being made the unexampled spectacle of a man convicted of a crime by a *Vermont* Jury, when he was entirely innocent.

Thus we have laid our unhappy case before the Court; and we request, not that your honours would, as common justice might seem to require, order the defendant to be directly discharged; though this would be congenial with your feelings as men, yet we are sensible as Judges you cannot do this summary justice consistently with those rules of Court, which, though founded in right, sometimes operate hardly upon individuals.

But we move that this oppressive verdict may be set aside, and the defendant have an opportunity to shew his innocence to another Jury, who we doubt not will pronounce him not guilty, without leaving their seats.

State Attorney. The address to the passions by the prisoner's counsel has, I confess, so far engaged mine, that I will not attempt to dissipate his pathetic and affecting illusions by a recurrence to those unadorned and stubborn facts which appeared on the trial, which would at once shew how greatly the pri-

soner and family are indebted to the eloquence of his advocate.

The question now before the Court is a point of dry law. So I am constrained by my official duty to consider it. So the Court are bound in their judicial character to decide upon it.

Stripped of all the vivid colouring of fancy, the case under consideration is simply this:

The prisoner at the bar has been indicted, arraigned and tried for the crime of forging and altering a promissory note. After a long and impartial trial, in which every indulgence was allowed him, in which the subject was minutely investigated, and some of the most eminent counsel at the bar heard with great patience by Court and Jury in his defence, the Jury have found him guilty.

He now moves for a new trial, grounded on the recent discovery of new and material evidence. The amount of this evidence is, that his wife innocently effected the alteration in the note, concealed it from her husband, and the circumstance never came to his knowledge until after the verdict.

The question is, will the Court grant a new trial on this ground?

Suppose a new trial granted. Let us inquire whether the prisoner could avail himself of this newly discovered evidence.

The alteration of the note by the wife was it seems a secret known only to herself.

How shall the prisoner prove to a future Jury that it was done by her?

Will he attempt to prove it by his wife? The law excludes her from testifying for or against her hus-

State
v.
J. W.

band.  Will he attempt to prove her declarations by other witnesses?  The undeviating rule of law is, " that which is not evidence in itself can never be made so by any circuity."  Better would it be to admit the oath than the assertions of the wife.  The oath might be some obligation upon her.  But her mere loose assertions in favour of a person in whom she has the nearest interest may be readily made, and surely would receive no additional credit by being heard in Court under the oath of another, who testifies not to the truth of her declarations, but simply that he heard her narrate them.

If, therefore, the newly discovered evidence cannot be admitted on the new trial, the grounds of the present motion fail.

*Miller.*  The objection to our motion seems to rest here, that in case a new trial be granted, the prisoner cannot avail himself of the discovery made by the wife.

The rule that husband and wife cannot be witnesses for or against each other, like all other general rules, has its exceptions.  We learn from the books, that one exception results from cases of " *evident necessity.*"  Is not this in point?  When we all perceive that an innocent person is, if this motion does not prevail, about to suffer the punishment of the guilty.  Is there not then here an evident necessity of departing from the general rule?  If it has been departed from to CONVICT as in the case of Lord *Audley*, where the wife was admitted to convict her husband of a capital crime, shall it not be deviated from in favour of innocence?  But if the wife cannot be ad-

mitted to testify, or even her declarations of her husband's innocence, testified to by others, may we not, now we have discovered a clew to this unfortunate transaction, be admitted to shew, by a variety of attending circumstances, the truth of her relation, and may they not amount to a violent, or at least to a probable presumption of the prisoner's innocence?

When a new trial is moved for on account of the discovery of material evidence, what weight such evidence may have with the Jury is not for the consideration of the Court, but merely its *materiality.* It is observable, that on the trial one witness, *Eunice French*, testified to the oversetting a vessel of water and wetting some papers; but at that time his counsel, for want of information, were unable to apply the circumstance in his defence. Undoubtedly many other circumstances of this nature may be proved.

The Attorney for the State has been pleased to pay a compliment to my eloquence which I neither merit or desire. The truth is, the simple narration of the " round unvarnished tale I have delivered," carries with it the force of eloquence without its embellishments. I am charged with addressing myself rather to the passions than the reason of the Court. If I could have presumed to have attempted to interest the feelings of the Judges, I might in lieu of a simple statement of facts, have called the attention of the Court to the pitiable situation of the distressed wife of the prisoner and their tender offspring, who now surround me, and who, by the mute but powerful eloquence of their tears, beg of your honours, *not* mercy for the guilty, but protection for the innocent.

State
v.
J. W.

Of all men I shall not be charged by those who know me with aiming to bias the decisions of this Court by *popular* considerations. The motto of the seal of the Court is with me a favourite maxim : *Fiat justitia ruat cœlum.* But it is certainly true, that the great object of conviction and punishment is the effect which they are to have on society. The reformation of the offender is but a secondary consideration. The crime and the punishment should therefore be necessarily connected in the view of the people. If they consider the former not to have existed, the latter, instead of producing a salutary effect, will shake their confidence in the administration of justice.

By a rigid adherence to the rules of law, this man may be condemned; but the infliction of punishment will have no salutary effect upon the people, for they will not condemn him. He will stand guiltless in the view of his family, for they know his innocence; and what in all events should console and support him, he will stand acquitted by his own conscience.

Motion dismissed.

*Daniel Chipman*, for the State.
*Samuel Miller*, for defendant.